IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60756-CIV-COHN-SELTZER

GLOBAL AEROSPACE, INC.,

       Plaintiff,

vs.

PLATINUM JET MANAGEMENT,
LLC, et al.,

       Defendants.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST PLATINUM JET MANAGEMENT, LLC

**THIS CAUSE** is before the Court on Plaintiff's Motion for Default Judgment

Against Platinum Jet Management, LLC [DE 49]. The Court has considered the Motion

and Plaintiff's related submissions, the record in this case, and is otherwise advised in

the premises. For the reasons discussed below, the Court will deny the Motion without

prejudice.

### I. BACKGROUND

**1.**    **The Complaint**

This action arises from the crash of a corporate jet operated by Defendant

Platinum Jet Management, LLC ("Platinum Jet") at Teterboro Airport on February 2,

2005. Global Aerospace, Inc. ("Global"), the agent and manager for a group of

underwriters that provided insurance for Platinum Jet in connection with the crash, filed

the instant lawsuit on May 21, 2009. The Complaint alleges that Platinum Jet and six of

its former employees misled Global about the circumstances surrounding the accident.

Compl. ¶ 1. Global also alleges that Defendants conspired with each other and third parties "to impede Global's investigative efforts for the purpose of obtaining insurance coverage benefits." Id. Global seeks a declaration that Defendants are not entitled to insurance coverage benefits for any liability arising out of the crash. Id. In addition, Global seeks indemnification for all amounts that Global previously paid to defend and settle claims related to the crash. Id.

## 2. Related Criminal Proceedings and Motions to Stay

A federal grand jury indicted certain Platinum Jet employees for criminal acts in connection with the crash at issue and many of the allegations in the Complaint are based on that indictment. See Ex. B to DE 1. Three of the individual Defendants filed motions to stay this action pending resolution of related criminal prosecutions in the District of New Jersey. See DE's 26, 30 and 52. The Defendants argued that "the civil action arises from the same underlying circumstances as, and alleges identical offenses to those charged as criminal offenses in, the related criminal proceedings. Thus, the civil action is linked inextricably to, and should be stayed pending a resolution of, the criminal proceedings." DE 30 at 2.

Plaintiff opposed the motions to stay "arguing that granting a stay is inappropriate under Eleventh Circuit law." DE 41 at 2. Plaintiff's Opposition attached the Applications for Permission to Enter Plea of Guilty signed by Defendants Joseph Singh and Andre Budhan, wherein these Defendants pled guilty to Count I (Conspiracy) of the criminal indictment. See Ex.'s A and B to DE 41. Count I of the indictment spans twenty-one pages and includes allegations that the criminal defendants conspired to defraud the government, various aviation agencies, customers, brokers and other

2

unnamed victims. See Ex. B to DE 1.

On August 19, 2009, the Court entered an Order Denying Motions to Stay. See DE 56. The Court denied the motions to stay without prejudice, finding that Defendants failed to meet their burden under the standard set forth by the Eleventh Circuit. See id. at 4-5.

### 3.    The Instant Motion

Global served the Complaint on Platinum Jet on May 21, 2009. See DE 11. On June 12, 2009, Illinois attorney Fred Begy filed a Special Appearance requesting an extension of time until July 3, 2009 for Platinum Jet to respond to the Complaint. See DE's 18, 19. The Court granted the extension, however, Platinum Jet did not file an Answer or otherwise respond to the Complaint by July 3, 2009. On July 13, 2009, a Clerk's Default was entered against Platinum Jet. See DE 36.

Plaintiff filed the instant Motion seeking a Default Judgement against Platinum Jet on Count I of the Complaint which seeks a Declaratory Judgment. Specifically, Plaintiff seeks a Declaratory Judgment by this Court ordering that Global is (1) "relieved of any and all duties to provide insurance benefits" to Platinum Jet "in conjunction with any past, present, or future claims arising from" the crash described above; and (2) "specifically relieved of its duty to defend [Platinum Jet], or pay any liability arising from" three lawsuits related to the crash. DE 49-1. Plaintiff also seeks a Default Judgment against Platinum Jet and in favor of Plaintiff on Count II (Breach of Contract) of the Complaint for damages in the amount of $19,614,789.28, plus costs and interest.

In support of the Motion, Plaintiff filed the Declaration of Steven D. Ivans, a Vice President and Claims Attorney for Global. See DE 50-2. Mr. Ivans quotes the contract

3

of insurance Global provided to Platinum Jet which "provides that it does not apply to

personal injury, '(4) arising out of the willful violation of a penal statute or ordinance

committed by or with the consent of the insured.'" Id. ¶ 8 (quoting Ex. A to DE 50-2,

Endorsement No. 3 at 2). Mr. Ivans further states that the "contract of insurance issued

to Platinum Jet also obligates Platinum Jet to cooperate with Global in the defense of

claims and 'assist in the securing and giving of evidence.'" Id. ¶ 9 (quoting Ex. A to DE

50-2 at 25). Relying on these provisions, Mr. Ivans asserts that "Global is entitled to a

determination that Platinum Jet is not entitled to insurance coverage benefits for loss

arising from the crash at Teterboro Airport," id. ¶ 11, for the following reasons:

> During its investigation of the crash and subsequent defense of claims,
> Defendants did not reveal to Global the facts alleged in the criminal
> indictment. Indeed, the indictment alleges that Defendants intentionally
> falsified records to hide their criminal violations. Global would not have
> insured Platinum Jet, and would not have granted coverage for loss
> arising from the crash at Teterboro Airport, had Global known that
> Defendants were operating Platinum Jet in the manner described in the
> indictment.

Id. ¶ 10.

In addition, Plaintiff submitted the Declaration of Timothy C. Bass ("Bass

Declaration"), who is a shareholder at the firm representing Plaintiff. The Bass

Declaration attaches a report regarding the crash issued by the National Transportation

Safety Board. See Ex. D to Bass Declaration. The report states as follows: "The

National Transportation Safety Board determines that the probable cause of the

accident was the pilot's failure to ensure the airplane was loaded within weight-and-

balance limits and their attempt to take off with the center of gravity well forward of the

forward takeoff limit, which prevented the airplane from rotating at the intended rotation

4

speed." Id. at ix.

Mr. Bass states that the "criminal charges are consistent with the findings set forth in the report." Bass Declaration ¶ 9. Mr. Bass declares that within Count I of the indictment, "the individual defendants are alleged to have: (a) contracted with unqualified pilots who had not received FAA-required training and who failed to meet certain knowledge, competency, and proficiency requirements; (b) contracted with pilots who did not have the required rest-time prior to scheduled flights; (c) contracted with pilots who flew in excess of 30 commercial charter flights in violation of FAA safety rules; and (d) intentionally falsified flight logs and records to hide their regulatory violations." Id. ¶ 7. Further, Mr. Bass states that Count I charges the individual defendants "with repeatedly failing to configure their aircraft in accordance with weight-and-balance criteria, and then intentionally falsifying weight-and-balance graphs to hide their safety violations." Id. ¶ 8. According to Mr. Bass, the "criminal indictment then alleges in Counts XX through XXIII that the pilot flying the aircraft on February 2, 2005 was not qualified to fly commercial flights, and that the crash was caused by defendants' intentional, reckless, and criminal configuration of the aircraft outside of mandatory weight-and-balance criteria." Id.

Mr. Bass also points out that Defendants Budhan and Singh each pled guilty to Count I of the indictment in their respective plea agreements and that Count I charged each of these individuals with "conspiracy to commit wire fraud." Bass Declaration ¶¶ 5, 6.

As mentioned, the Motion seeks a Default Judgment against Platinum Jet on Counts I and II of the Complaint. Plaintiff argues that the "individual defendants are not parties to Counts I and II of the Complaint, and thus will not be liable for, or bound by,

any judgment issued by the court on those counts. Furthermore, given the different allegations and requirements of proof necessary to prevail on Counts III through IX, there is no risk of inconsistent judgments." DE 49 at 4.

## II. ANALYSIS

District courts have "the authority to enter default judgment for failure to prosecute with reasonable diligence or to comply with its orders or rules of procedure." Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985). Federal Rule of Civil Procedure 55(a) provides, in pertinent part, that a default judgment may be entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." Fed. R. Civ. P. 55(a). A defaulted defendant is deemed to "admit[] the plaintiff's well-pleaded allegations of fact." Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). The defendant, however, "is not held to admit facts that are not well-pleaded or to admit conclusions of law." Id.; accord Cotton v. Massachusetts Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005). "Entry of judgment by default is a drastic remedy which should be used only in extreme situations." Wahl, 773 F.2d at 1169. "There is a strong preference that cases be heard on the merits instead of imposing sanctions that deprive a litigant of his day in court." Owens v. Benton, 190 Fed. Appx. 762, 763 (11th Cir. 2006).

"Courts have recognized . . . that in certain circumstances a default judgment is inappropriate if it results in inconsistency among judgments." Marshall & Ilsley Trust Co. v. Pate, 819 F.2d 806, 811 (7th Cir. 1987). The Supreme Court recognized this proposition in Frow v. De La Vega, 82 U.S. 552 (1872). In Frow, the plaintiff filed a complaint charging eight defendants with a "joint conspiracy" to defraud him of a piece of real property. Of these eight defendants, Frow failed to file a timely answer and the

district court entered a pre-trial default judgment against him.  The district court

ultimately decided the merits of the case against the plaintiff and dismissed the

complaint.  Frow appealed the default judgment to the Supreme Court.  Ruling in favor

of Frow, the Supreme Court wrote:

> If the court in such a case as this can lawfully make a final decree against
> one defendant separately, on the merits, while the cause was proceeding
> undetermined against the other, then this absurdity might follow: there
> might be one decree of the court sustaining the charge of joint fraud
> committed by the defendants and another decree disaffirming the said
> charge, and declaring it to be entirely unfounded, and dismissing the
> complainant's bill.  And such acts of incongruity, it seems, did actually
> occur in this case.  Such a state of things is unseemly and absurd, as well
> as unauthorized by law.

Id. at 554.

Modern courts have interpreted Frow to stand for the following proposition:

> [I]f at trial facts are proved that exonerate certain defendants and that as a
> matter of logic preclude the liability of another defendant, the plaintiff
> should be collaterally estopped from obtaining a judgment against the
> latter defendant, even though it failed to participate in the proceeding in
> which the exculpatory facts were proved.

Farzetta v. Turner & Newall, Ltd., 797 F.2d 151, 154 (3d Cir. 1986).  Several Circuits,

including the Eleventh, have found Frow applies to situations where defendants are

jointly and severally liable, or have closely related defenses.  See, e.g., Neilson v.

Chang (In re First T.D. & Inv., Inc.), 253 F.3d 520, 532 (9th Cir. 2001); Wilcox v.

Raintree Inns of America, Inc., 76 F.3d 394 (10th Cir. 1996); Gulf Coast Fans, Inc. v.

Midwest Electronics Importers, Inc., 740 F.2d 1499, 1512 (11th Cir. 1984); U.S. for Use

of Hudson v. Peerless Ins. Co., 374 F.2d 942 (4th Cir. 1967).  Other federal courts have

applied the Frow doctrine more narrowly, such as in cases of true joint liability or cases

where the defaulting defendant cannot be liable unless the non-defaulting defendants

are liable.  See, e.g., McMillian/ McMillian, Inc. v. Monticello Ins. Co., 116 F.3d 319 (8th

Cir. 1997) (Frow not extended to a situation where the co-defendants share closely related interests but are not truly jointly liable); Whelan v. Abell, 953 F.2d 663, 674-75 (D.C.Cir. 1992) (Frow should apply only when liability is truly joint or necessary for effective relief); In re Uranium Antitrust Litig., 617 F.2d 1248, 1256-58 (7th Cir. 1980) (Frow rule not extended to cases of joint and several liability if results are not logically inconsistent or contradictory).

According to Wright, Miller and Kane, the "key" in deciding the application of Frow to individual cases is to "recognize that the Frow principle is designed to apply only when it is necessary that the relief against the defendants be consistent. If that is not the case, then a default against one defendant may stand, even though the remaining defendants are found not liable." 10A  Wright, Miller & Kane, Federal Practice and Procedure § 2690 (3d ed. 1998 & Supp. 2009).  Even courts that take a limited view of the continued force of Frow conclude that the case controls "in situations where the liability of one defendant necessarily depends upon the liability of the others." International Controls Corp. v. Vesco, 535 F.2d 742, 746 n. 4 (2d Cir. 1976); see also In re Uranium, 617 F.2d at 1257.

At this stage in the litigation, the Court will deny Plaintiff's Motion without prejudice. In seeking a Default Judgment, Plaintiff seeks a Declaratory Judgment that Global is relieved of its obligations under the insurance contract it entered into with Platinum Jet, in part, because the contract "provides that it does not apply to personal injury, '(4) arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured.'"  DE 50-2 ¶ 8 (quoting Ex. A to DE 50-2, Endorsement No. 3 at 2).  This ruling would be inconsistent in the event the Individual Defendants are exonerated of the charges against them in this action and the related

8

criminal proceedings. Moreover, given that a corporate defendant can act only through its employees and agents, the defenses of the Individual Defendants will be "closely related" to the defenses of Platinum Jet. Wilcox, 76 F.3d 394, **3. For these reasons, courts routinely withhold default judgments declaring that an insurance policy is inapplicable until the claims against the defendants who appear in the action are adjudicated. See, e.g., Allstate Prop. and Cas. Ins. Co. v. Salazar-Castro, 2009 WL 196150 (D. Kan. Jan. 23, 2009); Safeco Ins. Co. of Am. v. Stephenson, 2007 WL 2026389 (W.D. Mo. July 9, 2007); Nautilus Ins. Co. v. I.L.S. Gen. Contractors, Inc., 369 F. Supp. 2d 906 (E. D. Mich 2005); State Farm Mut. Auto. Ins. Co. v. Jackson, 736 F. Supp. 958 (S.D. Ind. 1990).

The Court acknowledges that Plaintiff is entitled to Declaratory Judgment relieving Global of its duty to defend the lawsuits related to the crash if it can be shown that the crash arose "out of the willful violation of a penal statute or ordinance committed by or with the consent of" at least one of the Individual Defendants with the capacity to bind Platinum Jet. Ex. A to DE 50-2, Endorsement No. 3 at 2. That is, it could be possible that one or more of the Individual Defendants engaged in acts sufficient to find Platinum Jet breached its contract with Global, unbeknownst to the remaining Defendants. In that case, a Declaratory Judgment would no longer run the risk of being inconsistent with rulings in favor of some of the Individual Defendants.

The Court determines that Plaintiff has not yet satisfied this burden. Plaintiff has supplied the Applications for Permission to Enter Plea of Guilty for Defendants Singh and Budhan. Although these documents provide evidence that such Defendants engaged in willful violations of penal statutes, these plea agreements do not provide enough information for the Court to conclude that the crash arose out of such acts.

9

Particularly because there are ongoing criminal proceedings related to this very question, the Court finds that it is unwise to make such a critical determination prematurely.  If Plaintiff obtains further information, such as an adverse ruling against one of the Individual Defendants in one of the criminal actions, Plaintiff may submit such information to the Court.  Given that Plaintiff has a considerable interest in obtaining a Declaratory Judgment sooner rather than later as it is currently obligated to defend at least three ongoing lawsuits, the Court will consider such information at any point it becomes available.

### III. CONCLUSION

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Default Judgment Against Platinum Jet Management, LLC [DE 49] is **DENIED without prejudice**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 20 day of October, 2009.

**JAMES I. COHN**
**United States District Judge**

Copies provided to:

Counsel of record via CM/ECF

10