UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60756-CIV-COHN-SELTZER

GLOBAL AEROSPACE, INC.,

       Plaintiff,

vs.

PLATINUM JET MANAGEMENT,
LLC, et al.,

       Defendants.
_____/

### ORDER DENYING MOTION TO SET ASIDE CLERK'S DEFAULT

**THIS CAUSE** is before the Court on Defendant Platinum Jet Management, LLC's Motion to Set Aside Clerk's Default [DE 80]. The Court has considered the Motion, the parties' related submissions, the argument of counsel before the Court on January 21, 2010, the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

**1. The Complaint**

This action arises from the crash of a corporate jet operated by Defendant Platinum Jet Management, LLC ("Platinum Jet") at Teterboro Airport on February 2, 2005. Global Aerospace, Inc. ("Global"), the agent and manager for a group of underwriters that provided insurance for Platinum Jet in connection with the crash, filed the instant lawsuit on May 21, 2009. The Complaint alleges that Platinum Jet and six of its former employees misled Global about the circumstances surrounding the accident. Compl. ¶ 1. Global also alleges that Defendants conspired with each other and third parties "to impede Global's investigative efforts for the purpose of obtaining insurance

coverage benefits." Id. Global seeks a declaration that Defendants are not entitled to insurance coverage benefits for any liability arising out of the crash. Id. In addition, Global seeks indemnification for all amounts that Global previously paid to defend and settle claims related to the crash. Id.

## 2. Related Criminal Proceedings and Motions to Stay

A federal grand jury indicted certain Platinum Jet employees for criminal acts in connection with the crash at issue and many of the allegations in the Complaint are based on that indictment. See Ex. B to DE 1. Three of the individual Defendants filed motions to stay this action pending resolution of related criminal prosecutions in the District of New Jersey. See DE's 26, 30 and 52. The Defendants argued that "the civil action arises from the same underlying circumstances as, and alleges identical offenses to those charged as criminal offenses in, the related criminal proceedings. Thus, the civil action is linked inextricably to, and should be stayed pending a resolution of, the criminal proceedings." DE 30 at 2.

Plaintiff opposed the motions to stay "arguing that granting a stay is inappropriate under Eleventh Circuit law." DE 41 at 2. Plaintiff's Opposition attached the Applications for Permission to Enter Plea of Guilty signed by Defendants Joseph Singh and Andre Budhan, wherein these Defendants pled guilty to Count I (Conspiracy) of the criminal indictment. See Ex.'s A and B to DE 41. Count I of the indictment spans twenty-one pages and includes allegations that the criminal defendants conspired to defraud the government, various aviation agencies, customers, brokers and other unnamed victims. See Ex. B to DE 1.

On August 19, 2009, the Court entered an Order Denying Motions to Stay. See

DE 56. The Court denied the motions to stay without prejudice, finding that Defendants failed to meet their burden under the standard set forth by the Eleventh Circuit. See id. at 4-5.

### 3. Plaintiff's Motion for Default Judgment

Global served the Complaint on Platinum Jet on May 21, 2009. See DE 11. On June 12, 2009, Illinois attorney Fred Begy filed a Special Appearance requesting an extension of time until July 3, 2009 for Platinum Jet to respond to the Complaint. See DE's 18, 19. The Court granted the extension, however, Platinum Jet did not file an Answer or otherwise respond to the Complaint by July 3, 2009. On July 13, 2009, a Clerk's Default was entered against Platinum Jet. See DE 36.

Plaintiff filed a Motion requesting a Default Judgement against Platinum Jet on Count I of the Complaint which seeks a Declaratory Judgment. Specifically, Plaintiff sought a Declaratory Judgment by this Court ordering that Global is (1) "relieved of any and all duties to provide insurance benefits" to Platinum Jet "in conjunction with any past, present, or future claims arising from" the crash described above; and (2) "specifically relieved of its duty to defend [Platinum Jet], or pay any liability arising from" three lawsuits related to the crash. DE 49-1. Plaintiff also sought a Default Judgment against Platinum Jet and in favor of Plaintiff on Count II (Breach of Contract) of the Complaint for damages in the amount of $19,614,789.28, plus costs and interest. Plaintiff argued that the "individual defendants are not parties to Counts I and II of the Complaint, and thus will not be liable for, or bound by, any judgment issued by the court on those counts. Furthermore, given the different allegations and requirements of proof necessary to prevail on Counts III through IX, there is no risk of inconsistent

judgments." DE 49 at 4.

On October 20, 2009, the Court denied Plaintiff's Motion for Default Judgment Against Platinum Jet based on the following reasoning:

> In seeking a Default Judgment, Plaintiff seeks a Declaratory Judgment that Global is relieved of its obligations under the insurance contract it entered into with Platinum Jet, in part, because the contract "provides that it does not apply to personal injury, '(4) arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured.'" DE 50-2 ¶ 8 (quoting Ex. A to DE 50-2, Endorsement No. 3 at 2). This ruling would be inconsistent in the event the Individual Defendants are exonerated of the charges against them in this action and the related criminal proceedings. Moreover, given that a corporate defendant can act only through its employees and agents, the defenses of the Individual Defendants will be "closely related" to the defenses of Platinum Jet. Wilcox, 76 F.3d 394, **3. For these reasons, courts routinely withhold default judgments declaring that an insurance policy is inapplicable until the claims against the defendants who appear in the action are adjudicated.

DE 69 at 8-9 (citations omitted).

### 4. Renewed Motion for Default Judgment

On November 4, 2009, Plaintiff again sought a default judgment against Platinum Jet. In the motion, Plaintiff argued as follows:

> Global now renews its motion and provides evidence that the pilots who were operating the aircraft intentionally violated certain provisions of the Code of Federal Regulations, and those violations were the direct cause of the crash. Because the pilots were hired, employed, trained and dispatched by Platinum Jet (and, under applicable practices and procedures, were in ultimate control of the preparation and operation of the aircraft that crashed), their actions bind Platinum Jet and trigger the exclusion in Global's policy that precludes coverage for loss arising "out of the willful violation of a penal statute or ordinance committed by or with the consent of the Insured."

DE 70 at 3. Plaintiff also argued that "[i]ndependent of the criminal pleas and the pilots' violations of the Code of Federal Regulations; coverage is properly denied, and Global is further entitled to a default judgment, because the operations at Platinum Jet were so

4

inherently dangerous, any loss arising therefrom could not be an 'accident.'" Id. at 6. Accordingly, Plaintiff contended that the Court could grant a default judgment based on the foregoing grounds without running the risk of inconsistent judgments. The renewed motion also informed the Court "that Global has settled all claims made by passengers and third-parties who were injured because of Platinum Jet's reckless behavior." Id. at 9. Plaintiff represented that the only lawsuit now pending is "the one brought in Broward County by the two pilots whose misconduct caused the crash. Thus, the only claimants who could be affected by Global's withdrawal would be the very persons whose reckless conduct was directly responsible for the crash." Id.

### 5. Appearance of Michael Brassington

On November 9, 2009, Michael Brassington, one of the principals of Platinum Jet was served with the Complaint. On December 7, 2009, Brassington moved for a 60-day extension to respond to the Complaint. Brassington stated that "[d]ue to current financial constraints Defendant has been unable to retain counsel but will be able to retain counsel if given an additional 60 days." DE 75 at 1. The Motion highlighted the complexity of the action and the significant amount of damages sought. The Motion also stated that "[w]hile Defendant is not an attorney and therefore cannot act on behalf of Platinum Jet Management, LLC therefore Defendant requests that this motion also be considered on behalf of defendant corporation due to the fact that if the corporation is not granted the same extension as the Pro Se defendant then it would render the motion moot." Id. at 2.

On December 11, 2009, the Court entered an Order granting in part and denying in part Brassington's motion. See DE 77. The Court gave Brassington until December

23, 2009 to respond to the Complaint. The Court also noted that given the preference that cases be heard on the merits, the Court would refrain ruling on Plaintiff's Renewed Motion for Default Judgment until after Brassington had responded to the Complaint.

### 6. Motion to Set Aside Clerk's Default

On December 14, 2009, attorney Edward Curtis made an appearance on behalf of Andre Budhan, who had previously been acting *pro se*, and Platinum Jet. On December 18, 2009, Mr. Curtis filed a Motion to Set Aside Clear's Default on behalf of Platinum Jet.

## II. ANALYSIS

It is well-established that "defaults are seen with disfavor because of the strong policy of determining cases on their merits." Florida Physician's Ins. Co. v. Ehlers, 8 F.3d 780, 783 (11th Cir. 1993); accord In re Worldwide Web Systems, Inc., 328 F.3d 1291, 1295 (11th Cir. 2003). The Eleventh Circuit has also recognized that "a technical error or a slight mistake by a party's attorney should not deprive the party of an opportunity to present the merits of his claim." Ehlers, 8 F.3d at 783 (citation omitted). With this in mind, the Court "may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c).

In determining whether to set aside a clerk's entry of default, courts generally consider the following factors: (1) whether the default is culpable or willful, (2) whether setting aside default would prejudice the adversary, and (3) whether the defaulting party presents a meritorious defense. Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948, 951 (11th Cir. 1996). Additional factors include: (4) whether the public interest is implicated, (5) whether the defaulting

party will experience significant financial loss, and (6) whether the defaulting party acted promptly to correct the default. Id.  "Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default." Dierschke v. O'Cheskey, 975 F.2d 181, 184 (5th Cir. 1992).

Platinum Jet, as the moving party, bears the burden to establish "good cause." The Court acknowledges that Platinum Jet faces a lesser burden than a party seeking to vacate a default judgment. EEOC v. Mike Smith Pontiac GMC, Inc., 896 F.2d 524, 528 (11th Cir. 1990) (excusable neglect standard under Rule 60(b) is more rigorous than the "good cause" standard of Rule 55(c)). "'Good cause' is a mutable standard, varying from situation to situation.  It is also a liberal one-but not so elastic as to be devoid of substance." Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989).  "However, if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief." Compania Interamericana, 88 F.3d at 951-52.  As discussed below, the Court finds it dispositive that Platinum Jet exhibited an intentional or reckless disregard for this proceeding.

The Motion argues that Platinum Jet did not willfully default. See DE 80 at 2. According to the Motion, "the owners and managers of Platinum Jet were indicted by a Federal Grand Jury in January 2009; on advice of counsel, and pursuant to the criminal bond, the owners and managers of Platinum Jet did not communicate; individual owners of an LLC cannot represent the LLC in court proceedings; and, Andre Budhan recently received the authority to hire counsel to represent Platinum Jet and acted

7

timely upon receipt of that authority." Id. at 2-3.

Plaintiff argues that Platinum Jet's delay has been willful and significant. Plaintiff points out that "seven months after Global filed its lawsuit and six months after Mr. Begy first made an appearance on behalf of Platinum Jet, new counsel has entered an appearance for Platinum Jet claiming excusable delay." Id. at 4.

The Reply argues that Plaintiff is unable to establish that Platinum Jet acted "willfully" in its failure to respond to the complaint. "The failure to respond timely does not establish willfulness. The facts show a continued intent to defend, hampered by difficulties implementing the intent." DE 89 at 3. The Reply argues that unlike the cases cited by Plaintiff, "there is no evidence of intent not to appear and defend, or of an overall plan to delay these proceedings or of a considered decision to allow the default." Id.

Despite the arguments of Platinum Jet's counsel, there is little evidence in the record to establish why it took Platinum Jet so long to defend itself in this action. At oral argument, Platinum Jet's counsel argued that the delay was caused by Platinum Jet's inability to afford representation. The sole support for this argument is one line from the Affidavit of Andre Budhan which reads: "I concentrated my efforts and money on defending the criminal prosecution." DE 80-1 ¶ 4. This statement, from one of three principals of Platinum Jet, does not establish that Platinum Jet could not afford counsel. In addition, the first time the Court was given any notice of Platinum Jet's purported financial difficulties was when the instant Motion was filed.

"A party's lack of funds, however, does not justify a party's complete disregard of the rules of the court or its failure to notify the court of its predicament." ILGWU Nat.

Retirement Fund v. Empire State Mills Corp., 696 F. Supp. 885, 888 (S.D.N.Y. 1988) (citing Original Appalachian Artworks, Inc. v. Yuil Intern. Trading Corp., 105 F.R.D. 113, 116-17 (S.D.N.Y. 1985) (defendants' difficulty in obtaining an attorney did not excuse failure to answer or appear); Usery v. Weiner Bros., Inc., 70 F.R.D. 615, 617 (D. Conn. 1976) (defendant's decision that attorneys' fees were too high to warrant retaining counsel did not justify failure to appear); Rinieri v. News Syndicate Co., 385 F.2d 818, 823 (2d Cir. 1967) ("If a party lacks funds it is not given to him to decide ex parte that he is justified in not prosecuting his suit and is free to ignore the rules of the courts.")). The Court notes that the foregoing cases involved motions to vacate default judgments pursuant to Rule 60(b). Accordingly, the defendants in such cases faced a higher burden than Platinum Jet.

Certain courts have found the inability to afford representation is a sufficient basis to vacate the entry of a default or a default judgment. Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (vacating default judgment where defendant had written to court explaining position and seeking assistance in obtaining counsel and had filed belated *pro se* answer); Wintermantel-Baptista v. Hanohano, 2007 WL 1153822, at *3 (D. Haw. Apr. 17, 2007) (vacating default where defendants "have been making appearances throughout the litigation and have been actively trying to defend this case"); N.J. Right to Life Comm., Inc. v. N.J. Republican Prolife Coalition, 2006 WL 2252375, at *2 (D.N.J. Aug. 7, 2006) (vacating default where defendant faced "exigent circumstances," including a death in the family, and the case was "still in its infancy"). These cases, however, can be distinguished from the circumstances presented by Platinum Jet's Motion. In Traguth, at the outset, the defendant informed the court of her difficulty in

obtaining counsel and took several steps to defend the action.  Here, after long-time counsel Ed Begy obtained an extension on behalf of Platinum Jet, Platinum Jet failed to respond to or otherwise defend this action for six months.[1]  Platinum Jet not only disregarded this Court's deadline for responding to the Complaint, Platinum Jet then willfully ignored these proceedings for six months, including Plaintiff's Motion and Renewed Motion for Default Judgment against Platinum Jet.  Furthermore, both Hanohano and Traguth involved unsophisticated *pro se* defendants whereas this case involves a corporate Defendant that was in contact with an attorney.

After consideration of the cases, both those favorable and unfavorable to Platinum Jet's position, and the circumstances presented by this case, the Court finds that Platinum Jet was on notice of this case and knowingly chose not to defend itself for six months.  Platinum Jet did not advise the Court of any financial difficulties at the outset of this action and even now the evidence before this Court does not establish an inability to retain counsel.  At best, Platinum Jet's conduct was reckless, and at worst intentional.  Under either scenario, relief must be denied.  See Compania Interamericana, 88 F.3d at 951-52 (stating that "if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief").

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendant Platinum Jet Management, LLC's  Motion to Set Aside Clerk's Default [DE

---

[1]     Mr. Begy "had been representing Platinum Jet and its principals since February 2005."  DE 87 at 3.

80] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 28th day of January, 2010.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF