UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60756-CIV-COHN/SELTZER

GLOBAL AEROSPACE, INC.,

      Plaintiff,

v.

PLATINUM JET MANAGEMENT,
LLC, et al.,

      Defendants.

_____/

## ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND GRANTING MOTION FOR DEFAULT JUDGMENT

**THIS CAUSE** is before the Court on Plaintiff Global Aerospace, Inc's ("Global's")

Motion for Default Judgment Against Defendants Platinum Jet Management, LLC

("Platinum Jet"), Michael Brassington, and Paul Brassington [DE 166] ("Motion for

Default Judgment") and Platinum Jet's Renewed Motion to Dismiss for Lack of Subject

Matter Jurisdiction [DE 172] ("Motion to Dismiss").  The Court has considered both

motions, Platinum Jet's Response to the Motion for Default Judgment [DE 171]

("Platinum Jet's Response"), Global's Reply in Support of the Motion for Default

Judgment and Opposition to the Motion to Dismiss [DE 178] ("Global's Reply"), and

Platinum Jet's Reply in support of its Motion to Dismiss [DE 180] ("Platinum Jet's

Reply").  The Court has also considered the parties' related submissions and the entire

record in this case, including the Complaint [DE 1], the Returns of Service upon

Platinum Jet [DE 11] and Michael Brassington [DE 71], Paul Brassington's Waiver of

Service [DE 22], the Clerk's Entries of Default against Platinum Jet [DE 36], Michael

Brassington [DE 86], and Paul Brassington [DE 59], and is otherwise advised in the

premises.

## I. BACKGROUND

This action arises from the crash of a corporate jet operated by Defendant

Platinum Jet Management, LLC ("Platinum Jet") at Teterboro Airport, New Jersey, on

February 2, 2005.  Platinum Jet is a private, luxury charter airline service that provides

on-demand domestic and international air charter services to brokers and individual

customers.  Compl. ¶ 3.  Plaintiff Global Aerospace, Inc. ("Global") is the agent and

manager for the insurance companies that provided insurance for Platinum Jet

pursuant to a Policy of Insurance.  Id. ¶ 2; see also Exhibit A to Compl., ManagAir

Policy [DE 1 at 40–DE 1-1 at 26] ("Policy").  Global was responsible for the

management and adjudication of any claims relating to the Teterboro crash.  Id.  After

Global defended and settled numerous claims on behalf of Platinum Jet per the terms

of the Policy, Global learned that a federal grand jury had indicted Platinum Jet's

principals and certain employees for criminal acts that caused the crash.  Id. ¶ 1; see

also Exhibit B to Compl. [DE 1-27-62] ("Indictment").[1]

---

[1] In the criminal case, United States of America v. Michael Brassington, et al., Case No. 09-00045-DMC (D.N.J. 2009), Andre Budhan and Joseph Singh pled guilty to conspiracy (Count I).  See Exhibits B and C to Second Joint Status Report [DE's 143-2, 143-3].  All criminal charges were dropped against Brien MacKenzie and Francis Vieira. Second Joint Status Report at 2.  On November 15, 2010, the jury returned its verdict against Michael Brassington and Paul Brassington.  See Exhibit A to Second Joint Status Report [DE 143-1].  The jury found Michael Brassington guilty of conspiracy (Count I), certain false statement charges (Counts II-VII and XXI), and endangering the safety of the aircraft (Count XX), and not guilty on all remaining counts.  Id.  The jury found Paul Brassington guilty of conspiracy (Count I), and not guilty on all remaining counts.  Id.

**A. The Complaint**

On May 21, 2009, based largely on the allegations in the Indictment, Global filed the instant lawsuit against Platinum Jet and six of Platinum Jet's former employees (collectively "Defendants").  Underline See Complaint [DE 1].  The Complaint alleges that Defendants misled Global about the circumstances surrounding the plane crash and conspired with each other and third parties "to impede Global's investigative efforts for the purpose of obtaining insurance coverage benefits."  Id. ¶ 1.  Global therefore brings the following counts: declaratory judgment (Count I); breach of contract (Count II); fraud (Count III); civil conspiracy (Count IV); violation of the Federal RICO Act (Counts V and VI); violation of the Florida RICO Act (Counts VII and VIII); and alter ego liability (Count IX).

**B. Related Procedural Background**

On July 13, 2009, when Platinum Jet failed to plead or otherwise defend this action, the Clerk of Court entered a default against Platinum Jet [DE 36].  Thereafter, the Court denied without prejudice Global's Motion for Default Judgment Against Platinum Jet [DE 69] on October 20, 2009, and Global's Renewed Motion for Default Judgment Against Platinum Jet [DE 99] on May 4, 2010.  The Court then denied Platinum Jet's Motion to Set Aside Clerk's Default on January 28, 2010 [DE 95] and denied Platinum Jet's Motion to Dismiss for Lack of Subject Matter Jurisdiction on January 24, 2011 [DE 144].

On August 27, 2009, the Clerk of Court entered a default against Defendant Paul Brassington [DE 59], and on January 4, 2010, the Clerk of Court entered a default

3

against Defendant Michael Brassington [DE 86].  On September 8, 2010, per the

parties' Joint Motion to Dismiss With Prejudice [DE 113], the Court dismissed

Defendants Joseph Singh, Brien McKenzie, and Francis Vieira [DE 118].  Then, on

April 6, 2011, the Court granted Global's request to dismiss Andre Budhan [DE 162].

Accordingly the only remaining defendants are Platinum Jet, Paul Brassington, and

Michael Brassington, all of whom are currently in default.

### C. Motion for Default Judgment and Renewed Motion to Dismiss

On April 26, 2011, Global filed its Motion for Default Judgment against the

remaining defaulted defendants.  See Mot. for Default Jgmt.  On May 20, 2011,

Platinum Jet responded, arguing that default judgment should be denied because

Global lacks standing to bring this lawsuit.  See Platinum Jet's Resp.  The same day,

Platinum Jet filed its Motion to Dismiss based on Global's alleged lack of standing,

incorporating the arguments set forth in its Response to the Motion for Default

Judgment.  See Mot. to Dismiss.  Both motions have been fully briefed and are ripe for

adjudication.

### II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction.  See 13 Charles Alan Wright,

Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3522 (2d ed.

1984 & Supp. 2008).  A claim cannot proceed in federal court if the plaintiff does not

have standing.  Valley Forge Christian Coll. v. Am. United for Separation of Church &

State, 454 U.S. 464, 471 (1982).  A motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(1) encompasses both challenges based on the court's lack of federal

subject matter jurisdiction and challenges based on lack of standing.  Stalley v. Orlando
Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is
jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack
of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." (internal quotations
omitted)); see also Holy Cross Hosp., Inc. v. Baskot, No. 10-62133-CIV, 2010 WL
5418999, at *2 (S.D. Fla. Dec. 23, 2010) ("Standing is jurisdictional in nature; therefore,
Defendants proceeded under Rule 12(b)(1) to dismiss Count I for lack of standing.").

A Rule 12(b)(1) standing challenge can be either "facial" or "factual."  Lawrence
v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  Facial challenges attack standing
based solely on the allegations in the complaint and any exhibits attached to the
complaint, see Stalley, 524 F.3d at 1233, and the district court takes the allegations in
the complaint as true when deciding the motion, Lawrence, 919 F.2d at 1529.  Factual
attacks challenge standing in fact, encompassing matters outside of the pleadings, and
therefore allow the district court to consider extrinsic evidence such as testimony and
affidavits.  Id.  When the attack is facial, the trial court must afford the plaintiff the
benefit of "safeguards similar to those provided in opposing a Rule 12(b)(6)
motion—the court must consider the allegations of the complaint to be true."  Id. at
1529 (citations omitted).  But when the attack is factual:

> the trial court may proceed as it never could under 12(b)(6) or [Rule] 56.
> Because at issue in a factual 12(b)(1) motion is the trial court's
> jurisdiction—its very power to hear the case—there is substantial authority
> that the trial court is free to weigh the evidence and satisfy itself as to the
> existence of its power to hear the case.  In short, no presumptive truthfulness
> attaches to plaintiff's allegations, and the existence of disputed material facts
> will not preclude the trial court from evaluating for itself the merits of
> jurisdictional claims.

Id. (citations omitted).

## III. ANALYSIS

Platinum Jet's Motion to Dismiss is not based solely on the allegations of the

Complaint and any attached exhibits; rather "[t]he factual basis for this renewed

challenge is the deposition testimony of Steven D. Ivans taken on April 25, 2011."

Platinum Jet's Resp. at 5; Exhibit A to Platinum Jet's Resp., Deposition of Steven D.

Ivans [DE 171-1] ("Ivans Deposition").  Accordingly, this is a factual challenge, and the

Court may consider extrinsic evidence, including the Ivans Deposition and the Members

Agreement Relating to the Global Aerospace Underwriters Pool, Exhibit B to Global's

Reply [DE's 178-2, 178-3] ("Pooling Agreement").  See Lawrence, 919 F.2d at 1529;

see also Stalley, 524 F.3d at 1233.[2]  As discussed in detail below, after consideration of

the evidence, the Court finds that Global has standing to sue.

A party may not bring a claim in federal court unless that party has standing to

do so.  Valley Forge, 454 U.S. at 471.  The constitutional standing analysis requires the

plaintiff to demonstrate that: (1) the plaintiff suffered an injury in fact; (2) the injury was

causally connected to the defendant's action; and (3) the injury will be redressed by a

judgment in the plaintiff's favor.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61

(1992).  Platinum Jet's challenge centers on the first element: whether Global suffered

---

[2]  Additionally, the fact that Platinum Jet is in default does not bar its subject matter jurisdiction and standing challenges.  See Herskowitz v. Reid, 187 Fed. App'x 911, 913 (11th Cir. 2006) (holding district court did not err in addressing subject matter jurisdiction *sua sponte*, despite defendant's default); see also Stalley v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008).  These issues may not be waived, and the Court may even address them *sua sponte*.  Howard v. Lemmons, 547 F.2d 290, 290 n.1 (5th Cir. 1977) ("there is no doubt that the District Court could dismiss the plaintiff's action *sua sponte* for failure of federal jurisdiction pursuant to F.R.C.P. 12(h)(3) . . .").

an injury in fact.[3]  Platinum Jet's Resp. at 8.

Injury in fact requires "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical."  Id. at 560 (citations and internal quotations omitted); see also Stalley, 524 F.3d at 1232.  Global argues that it has standing to sue because it has suffered its own injury in fact, but also that it has standing to sue as the insurers' designated agent. The Court agrees.

## A. Global Suffered an Injury In Fact

Global has standing to bring this claim because it has suffered its own injury in fact.  See Valley Forge, 454 U.S. at 471; see also Lujan, 504 U.S. at 560-61.  In denying Platinum Jet's first Motion to Dismiss for Lack of Subject Matter Jurisdiction, the Court noted:

> Global's Complaint states that Platinum Jet's principals and employees "intentionally and wrongfully failed to disclose to Global the facts set forth in the indictment, and in some instances affirmatively misled Global." Compl. ¶ 1.  These same individuals allegedly "conspired with each other and third parties to impede Global's investigative efforts for the purpose of obtaining insurance coverage benefits." Id.; see also id. ¶¶ 25-30 (listing individuals' specific fraudulent acts).  Additionally, the Complaint identifies the claims that Global defended and settled on behalf of Platinum Jet, as well as those it was still in the process of defending at the time the Complaint was filed. Id. ¶¶ 32-37.  In total, Global alleges that it paid over $25 million in defending and settling these claims.  Opp'n at 2 (citing Compl. ¶¶ 31-37 (Global "paid substantial sums")).  Finally, Global states that "[h]ad Defendants given Global full and complete information, Global would have immediately filed a lawsuit seeking a declaration of non-coverage, and would not have paid the money it did to settle claims and lawsuits arising from the crash at Teterboro Airport."  Id. ¶ 42.  Together, these factual allegations represent that the

---

[3]  Platinum Jet does not contest that the injury was causally connected to Defendants' actions or that the injury will be redressed by a judgment in Global's favor. See Lujan, 504 U.S. at 560-61.

money Global paid and the resources it used in defending, settling, and
investigating claims on behalf of Platinum Jet are concrete, actual injuries
resulting from Defendants' conduct.  This is enough to survive a motion to
dismiss.  See Bischoff, 222 F.3d at 878.

Order Denying Motion to Dismiss for Lack of Subject Matter Jurisdiction and Granting

Motion to Strike [DE 144] ("January 22nd Order") at 8.

Now, in its factual challenge, Platinum Jet relies on Mr. Ivans' deposition

testimony to argue that Global has not suffered an injury in fact and the underlying pool

of insurers were the only ones who incurred the alleged damages.  Platinum Jet's Resp.

at 8.  In his deposition, Mr. Ivans agreed that the payouts and attorney's fees at issue in

this case are "a loss from the pool members and not a loss attributable to Global."

Ivans Dep. at 56:20-25.  He also testified, "With regards to the question of does Global

Aerospace, Inc., the manager of the pool, have any obligations to an insured should all

the pool members become insolvent, the answer is that our position is no."  Id. at 69:10-

15.  He went on to state, "We have no contractual obligations to our insureds as pool

manager."  Id. at 68:16-17.  Additionally, Platinum Jet highlights the fact that the money

for three categories of costs—(1) incident cost, including the incident and reimbursing

people for personal injury, property damage, and the plane crash, (2) legal costs and

related attorney's expenses, and (3) expenses arising in "having to deal with this claim

like flying to a particular place, taking a camera and getting film developed—all came

from the pool members, and not directly from Global.  See Platinum Jet's Resp. at 7

(citing Ivans Dep. at 53:18-54:5, 54:25-55:3).

However, the fact that the money Global paid out came from insurance

companies that Global represents rather than from Global's own funds does not change

the fact that the tortious conduct at issue was directed toward Global during Global's actions defending those insurance companies. See, e.g., Compl. ¶ 1 (Defendants intentionally and wrongfully failed to disclose facts to Global, affirmatively misled Global, and impeded Global's investigative efforts); id. ¶¶ 25-30 (listing individuals' specific acts constituting "Fraud as to Global"); id. ¶¶ 32-38 (listing claims Global defended and settled). Further, Global was the one responsible for negotiating settlements and administering payouts. Declaration of Steven D. Ivans [DE 102-1] ("Ivans Declaration") ¶ 2; see also Global's Reply at 5. In responding to the Motion to Dismiss, Global states, "To perform this function, the insurance companies delivered funds to Global, which Global held in its own accounts. Global then issued checks to the claimants once a settlement was reached." Global's Reply at 5 (citing Ivans Decl. ¶¶ 3, 9, 10; Ivans. Dep. at 53:18-56:9).

In sum, the facts demonstrate that Defendants directed fraudulent activity toward Global and that Global was misled into directing resources toward claims, thereby suffering its own injury. Platinum Jet never challenged these factual assertions, and by virtue of its default, Platinum Jet accepts these factual assertions as true. See Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Though the Court may look beyond the allegations on the face of the Complaint and the attached exhibits when evaluating a factual challenge such as this one, Lawrence, 919 F.2d at 1529, the factual allegations have not proved false. Therefore, even considering the Ivans Deposition, Global has shown that it suffered its own injury in fact resulting from Defendants' conduct, and thus, has standing to sue in its own right.

9

**B. Global Has Standing as the Insurers' Designated Agent**

Global also has standing to sue as the insurers' designated agent.  An agent

who contracts in his own name may sue on that contract without joining his principal.

Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc., 630 F.2d 250, 258 (5th Cir.

1980) (citing Restatement 2d of Agency § 364 (1957)); see also Bache & Co. v. Int'l

Controls Corp., 324 F. Supp. 998, 1004-05 (S.D.N.Y. 1971) aff'd, 469 F.2d 696 (2d Cir.

1972) (citing Farmers Underwriters Ass'n v. Wanner, 30 F. Supp. 358 (D. Id. 1938) and

Albany & Rensselaer Iron & Steel Co. v. Lundberg, 121 U.S. 451 (1887)).[4]

Under these principles, Global has standing because it is the agent for the

insurance companies, and it contracted in its own name.  In the Pooling Agreement, the

insurance companies designated Global as their agent.  See Pooling Agmt. at 5, § 2.1

("Each Insurer hereby appoints each of Global and AAU to act as its agent . . ."); see

also id. at 2 § 1.1 ("Agent" means each of Global and AAU").  The insurers also

authorized Global to perform a number of tasks on their behalf, including issuing

contracts, administering claims, and suing.  See id. at 40-41, Schedule 3, § 1.2.

Specifically, the Pooling Agreement authorized Global, among others things, to:

(a) receive . . . proposals for business . . .  and to accept such proposals . .
.on such basis as it thinks fit; . . .

(e) sign, complete, issue and deliver slips, endorsements, policies and all
other documents . . .; . . .

(g) receive premiums, refunds, and reinsurance recoveries payable to and
to pay claims and reinsurance premiums on behalf of the Insurer . . . and to

_____

[4]  Even an agent who is not a party promisee may still bring suit on a contract in
his own name if he "has an interest in the subject matter of the contract made by him on
behalf of his principal."  Id.

10

disburse and to collect the same to and from the Insurer and to give and obtain receipts to and from any person for the same in such [form] as shall from time to time be determined by the relevant Agent;

(h) settle, adjust, compromise, allow and pay or receive all claims for which the Insurer may severally be liable or which may be made against the Insurer severally under any policy so issued or which the Insurer may have against any other person under any reinsurance effected on its behalf and to enter into any loss, settlement or other agreements with any party and to make ex gratia payments;

(i) enforce against third persons all rights which may accrue to the Insurer . . .;

(j) arrange for, obtain and provide to the Insurers surveys, reports, inspections and any other relevant or appropriate evidence or data and professional advice and assistance . . .; . . .

(l) commence proceedings in and appear for and represent the Insurers before any court or tribunal whatsoever or arbitration and to appoint and employ any counsel and legal or other professional advisers or representatives and to pay them such charges, fees and expenses as either Agent may think necessary or just to appropriate and to sign any agreement to be bound by any award made . . . and to withdraw from or settle or compromise any proceedings in any such court . . . as the relevant Agent shall think fit;

(m) demand, recover and receive from every person, firm or corporation liable to pay or deliver the same all monies, securities, chattels, goods and property which the Insurers may from time to time be entitled to demand or receive in connection with the Business and to give and sign effectual receipts and other discharges fro the same respectively . . .

Id.

In accordance with this authority, Global issued the insurance contract to Platinum Jet, and signed the contract in its own name on behalf of its principals.  See Policy.  The Policy stated that it was issued through Global, see id. at cover page, included Global's logo on every page, see generally id., and stated that it could not be amended without Global's consent, see id. at 26 ¶ 9.  The Policy was also signed by

11

Global's President and Secretary.  Id. at 27.  Further, after issuing the Policy, Global

consistently held itself out as the managing agent for the insurers and defended and

settled claims with Platinum Jet's knowledge and consent.  See Compl.; see also

Munnings v. Fedex Ground Package Sys., Inc., 2008 WL 1744779, at *3 (M.D. Fla.

2008) (holding that an agent may be considered a party to a contract based on the

"agent's manifestation of assent to be bound personally" and "the manner in which an

agent's name appears in a contract.").

        Platinum Jet disputes that Global represents the insurance companies in this

case, see Platinum Jet's Reply at 5, but the Complaint itself states, "Global is the agent

and manager for a group of underwriters who provided insurance to Platinum Jet for

liability arising from the crash."  Compl. ¶ 1.  Significantly, Platinum Jet, by its actions,

recognized Global's authority when it tendered to Global all claims arising from the

Teterboro crash.  See Compl. ¶¶ 16-17.  Platinum Jet never objected when Global hired

a claims adjuster to investigate the crash and appraise the property damage, appointed

counsel to defend Platinum Jet, and paid millions of dollars in defending and settling

claims against Platinum Jet.  Id. ¶¶ 16-17, 31-37.

        The fact that the money used to pay the claims came from the pool of insurance

companies rather than from Global's own funds is irrelevant under this analysis,

because agency principles allow for an agent to sue on behalf of its injured principal.

See Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Res. Auth., 528 F. Supp. 768, 776

(D.P.R. 1981) (citing Prevor-Mayorsohn Caribbean, Inv. v. P.R. Marine Mgmt., Inc., 620

F.2d 1, 4 (1st Cir. 1980) and Bache, 324 F. Supp. at 1004-05 ("Such an agent is a

proper plaintiff even though the damages were sustained by another, [the agent] claims

no financial interest in the transaction or litigation, and even though [the agent] did not

have title to, or more than a transient possessory or custodial interest in, the property

forming the subject of the dispute").  Platinum Jet does not dispute that the insurance

companies were injured.  Accordingly, in addition to the above-conclusion that Global

has standing to sue based on its own injury in fact, Global also has standing to bring

this action as an agent of the underlying insurers based on the insurers' injury.[5]

_____

[5]  In its Reply in support of the Motion to Dismiss, Platinum Jet suggests that a
ruling in Global's favor begs the question, "What would prevent the insurers from
bringing an action against Platinum Jet for the same $20 million the insurers paid in
claims." Reply at 7.  The fact that Global is a real party in interest and has standing to
sue as the insurers' agent prevents the insurers from bringing such an action in the
future.  As the court in Prevor stated:

> The basic purpose of [Federal Rule of Civil Procedure 17(a)'s] insistence that
> every action be prosecuted in the name of the real party in interest is to
> protect a defendant from facing a subsequent similar action brought by one
> not a party to the present proceeding and to ensure that any action taken to
> judgment will have its proper effect as res judicata.  Pac. Coast Agric. Export
> Ass'n v. Sunkist Growers, Inc., 526 F.2d 1196, 1208 (9th Cir. 1975), cert.
> denied, 425 U.S. 959 (1976); 6 Wright & Miller, Federal Practice and
> Procedure § 1543, at 644.  To accomplish this, however, it is not necessary
> that there always be only one real party in interest.  See 6 Wright & Miller §
> 1543 at 645 (bailee's express right under Rule 17 to bring action should not
> be read as preventing bailor from maintaining suit; provision allowing suit in
> name of party with whom or in whose name a contract has been made for
> the benefit of another does not prevent third-party beneficiary, where
> applicable law allows, from commencing the action) . . . . In such situations,
> special res judicata principles protect against the possibility of double
> recovery.  Thus a "judgment in favor of or against either bailor or bailee for
> the whole loss bar(s) any recovery by the other," . . . and principals are
> bound by judgments entered in actions properly litigated by their agents on
> their behalf.

Prevor, 620 F.2d at 4; see also Celanese Corp. of Am. v. John Clark Indus., 214
F.2d 551, 556 (5th Cir. 1954) ("the purpose of the practice long obtaining in the
federal courts and now set forth in [Rule 17] that every action shall be
prosecuted in the name of the real party in interest, is to enable the defendant to
avail himself of evidence and defenses that the defendant has against the real

## C. The Court Denies the Request for a Hearing

Finally, though Platinum Jet failed to litigate this case and has defaulted, it now contends that "this court can not summarily enter a final judgment without a hearing on the matter of damages."  Platinum Jet's Resp. at 2.  Platinum Jet argues that Mr. Ivans' "deposition testimony creates an issue of fact regarding Global's damages which should be resolved through an evidentiary hearing."  Id. at 2-3.  Yet, Platinum Jet has failed to demonstrate any factual issue regarding the amount of damages Global requests.  Rather, Platinum Jet's entire argument against default judgment is based on a challenge to Global's standing to bring this case, and as discussed above, the Court has found that Global has standing.  Further, the record evidence, as well as the supporting documentation, demonstrate that Global is entitled to the relief requested in its Motion for Default Judgment.  Therefore, the request for an evidentiary hearing is denied, and the Court will grant Global's Motion for Default Judgment.

---

party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party at interest on the same matter).  As more fully discussed in the Court's January 22nd Order, denying Platinum Jet's first Motion to Dismiss, Global is a real party in interest in this case.  See Jan. 22nd Order at 10-12.  In the instant renewed motion, Platinum Jet does not dispute that Global is a real party in interest.  Therefore, Global has the right to bring this case, and a judgment entered in this action binds Global's principals.  See Prevor, 620 F.2d at 4.

**IV. CONCLUSION**

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.      Defendant Platinum Jet Management, LLC's Renewed Motion to Dismiss

for Lack of Subject Matter Jurisdiction [DE 172] is **DENIED**;

2.      Plaintiff Global Aerospace, Inc.'s Motion for Default Judgment Against

Defendants Platinum Jet Management, LLC, Michael Brassington, and

Paul Brassington [DE 166] is **GRANTED**;

3.      The Court will enter a separate Final Default Judgment.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, on this 23rd day of June, 2011.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of Record via CM/ECF
*Pro se* parties via regular mail

15